UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VIRGIN MOBILE USA IPO LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | DOCUMENT ELECTRONICALLY FILED<br><br>Lead Case No. 07-05619 (SDW-MCA)<br>(Securities Class Action)<br><br>**DEFENDANTS' JOINT DISCOVERY PLAN SUBMISSION** |

1. **Set forth a factual description of the case. Include the causes of action and affirmative defenses asserted.**

   Plaintiffs allege that the registration statement and prospectus (the "Prospectus") issued in connection with Virgin Mobile USA, Inc.'s ("VMU") October 2007 initial public offering ("IPO") violated Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"). In their Complaint Plaintiffs point to three alleged facts they claim should have been disclosed in the Prospectus but that were only disclosed a month after the IPO: (1) that VMU's loss was larger in the third quarter of 2007 ("Q3 2007") than it had been in the third quarter of 2006 ("Q3 2006"); (2) that VMU's expenses increased in Q3 2007 over Q3 2006; and (3) that VMU's rate of net customer growth ("net adds") was slower in Q3 2007 than it had been in 2006. Defendants assert that none of these alleged facts constitute material omissions because they either did not occur or were explicitly disclosed in the Prospectus.

   First, in terms of operating results, VMU's loss from Q3 2006 to Q3 2007 did not increase but rather narrowed. Plaintiffs misinterpret a post-IPO announcement regarding how VMU was accounting for a settlement reserve to argue otherwise. Second, the Prospectus explicitly disclosed that VMU's expenses were increasing. Because the increase in expenses for Q3 2007 (announced after the IPO) was in line with or below the increases disclosed in the Prospectus, there was no material omission. Third, the Prospectus explicitly disclosed that VMU's rate of net adds was slowing. The securities laws do not require disclosure in a Prospectus of interim results (such as for Q3 2007) unless those results represented a "known trend" that was "an extreme departure" from the range of results that could have been anticipated by the market at that time. Plaintiffs will not be able to prove that VMU had all the necessary information to conclusively "know" what its net add trend was at the time of the IPO or that the results for Q3 2007 would represent an "extreme departure" from its already disclosed decline in subscriber growth.

Plaintiffs also argue more generally that the general business objectives laid out by VMU in the Prospectus were misleading because VMU omitted to state that it was having financial difficulties that prevented it from accomplishing these goals. These statements in the Prospectus are not actionable under the securities laws because they were either true at the time of the IPO or were general statements of corporate optimism that Courts routinely rule as inactionable because no reasonable investor would rely upon them. Plaintiffs' reliance upon confidential informants to support their argument that VMU was in financial trouble prior to the IPO is misplaced. Plaintiffs have not explained how these individuals would have been in a position to know the strategic reasons behind either the alleged dealings with vendors or the alleged reduction in workforce, even if they were aware of the relevant facts. Nor have Plaintiffs explained how these isolated alleged financial events demonstrate a broad inability to pursue any strategy set forth in the Prospectus.

Defendants will also assert a loss causation argument. Plaintiffs argue that the aforementioned omissions were material because when VMU announced its Q3 2007 results and Q4 2007 guidance on November 15, 2007, its stock price declined precipitously the next day. Defendants will demonstrate that VMU's overall stock price decline, which started immediately after the IPO and before the alleged corrective disclosure on November 15, resulted from the overall downturn in the economy which began after the IPO, not from any alleged omissions in the Prospectus. Defendants will also demonstrate that the specific drop in stock price following the November 15 announcement was caused by the announcement that day of VMU's revised guidance for Q4 2007 and 2008 guidance, not its Q3 2007 results which industry analysts reported were positive.

Defendants will also demonstrate that none of the post-November 15 announcements had any relationship to Plaintiffs' alleged losses. First, Plaintiffs do not argue that the November 15 announcement contained any misstatements or omissions of material fact. Therefore, there was nothing in the announcement that needed to be corrected in any subsequent disclosures to the market. Second, the items Plaintiffs point to as having been disclosed after November 15 all occurred well after the Prospectus was issued and do not "correct" anything in the Prospectus.

Plaintiffs will be unable to establish that either Corvina Holdings Limited or Sprint Nextel Corp. was a control person under Section 15. Nor was there any culpable participation by Corvina or Sprint in any primary violation of securities laws.

In addition to the foregoing, Merrill Lynch, Pierce, Fenner & Smith, Inc., Bear, Stearns & Co., Inc., Thomas Weisel Partners, LLC and Raymond James & Associates, Inc. (collectively, the "Underwriter Defendants" or "Underwriters") separately intend to establish their defenses to liability under Section 11. Among other defenses, the Underwriters will demonstrate that they "had, after reasonable investigation, reasonable ground to believe and did believe, at the time . . . the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(b)(3)(A).

2. **Have settlement discussions taken place? Yes __xxxxx__ No _____**
   **If so, when?**

   Unsuccessful mediation took place in New York before the Hon. Layn R. Phillips (Ret.) on June 12, 2009.

3. **The parties [have _____ -have not  xxxxx  ] exchanged the information required by Fed. R. Civ. P. 26(a)(1). If not, state the reason therefor.**

   Defendant Virgin Mobile USA, Inc. has provided Plaintiffs with the Company's relevant insurance policies as required by Fed. R. Civ. P. 26(a)(1).

   The parties have agreed that documents will be produced during the course of discovery in response to any particular request served upon the parties.  The parties have also agreed that the names and contact of information of individuals likely to have discoverable information will be served no later than July 8, 2009.  The parties have further agreed that revelation of damages and computation thereof will be subject to the scheduling order to be entered by the Court relating to the timing and disclosure of expert witnesses and their reports.

4. **Describe any discovery conducted other than the above disclosures.**

   Lead Plaintiffs have served Interrogatories directed to Virgin Mobile and the Underwriter Defendants on May 28, 2009.  In addition, Lead Plaintiffs served requests for documents on the following Defendants:  Virgin Mobile on May 5, 2009; Individual Defendants (Daniel H. Schulman, John D. Feehan, Jr., Frances Brandon-Farrow, Mark Poole, Robert Samuelson, and Douglas B. Lynn) on May 21, 2009; Underwriter Defendants (Merrill Lynch Pierce Fenner & Smith, Inc., Bear, Stearns & Co., Inc., Raymond James & Assoc., Inc., and Thomas Weisel Partners, LLC) on May 15, 2009; and Corporate Defendants (Corvina Holdings Limited and Sprint Nextel Corp.) on May 15, 2009.

   The parties agreed that responses to discovery would be served after mediation and the parties have met and conferred on a discovery schedule.  On June 15, 2009, Lead Plaintiffs re-served all discovery upon the parties and indicated that responses would be due by July 15, 2009 (in accordance with the 30-day requirement of the Federal Rules of Civil Procedure).

   Defendants plan to serve interrogatories and requests for the production of documents on or before July 8, 2009.

5. **Generally, dispositive Motions cannot be filed until the completion of discovery. Describe any Motions any party may seek to make prior to the completion of discovery.  Include any jurisdictional Motions and Motions to Amend.**

Lead Plaintiffs have informed us that they may seek to file a motion for class certification pursuant to Fed. R. Civ. P. 23, prior to the completion of discovery, and may also seek to file a motion to amend the complaint. Defendants may seek to file a motion for partial summary judgment pursuant to Fed. R. Civ. P. 56(b), prior to the completion of discovery, on any issue that may be removed from the case at that point.

The Underwriters respectfully refer the Court to Item 6(b) below with respect to bifurcating discovery.

6. **The parties propose the following:**

   **(a) Discovery is needed on the following subjects:**

   It is expected that Discovery will encompass the issues alleged in the Complaint (and will include the production of electronic mail messages and other electronic data).

   Defendants expect to take discovery on issues related to the identity of the confidential witnesses referred to in the Complaint and which statements therein were attributable to each confidential witness as well as all communications by Plaintiffs with any of VMU's present or former employees, officers, directors, customers or vendors. Defendants also expect to take discovery on topics, including, but not limited to: Plaintiffs' decision to purchase VMU's stock; documents related to the purchase and/or disposition of any such stock by plaintiffs and any other persons who bought, sold or otherwise traded in VMU's stock; Plaintiffs' decision to act as lead plaintiffs and to retain the law firm of Kahn, Swick & Foti, LLC; the basis (documentary or otherwise) for the allegations in the Complaint that Defendants violated the securities laws; and issues related to class certification.

   **(b) Should discovery be conducted in phases? If so, explain.**

   Defendants believe that it would be more appropriate and efficient to conduct discovery regarding class certification in advance of discovery on the merits. If the Court concurs with this approach, Defendants would propose the following schedule:

   Completion of class depositions by August 24, 2009.

   Lead Plaintiffs' Motion for Class Certification by September 23, 2009.

   Memoranda of Law in Opposition to Lead Plaintiffs' Motion by November 23, 2009.

> Reply Memorandum of Law in Further Support of Lead Plaintiffs' Motion by December 23, 2009.
>
> Pretrial Conference to set remaining discovery schedule within 60 days of Lead Plaintiffs' Reply Memorandum.

The Underwriter Defendants also request that the discovery schedule be bifurcated to defer discovery on certain topics (including discovery with respect to the Underwriters' due diligence defense) until after the Court has rendered a decision with respect to the Company's claimed misrepresentations or omissions. Several events have necessitated the need for bifurcation, including the automatic stay arising from Lehman Brothers, Inc.'s 2008 bankruptcy. Because of the imposition of the court ordered stay, the Underwriters are presently unable to access documents currently within the possession, custody or control of Lehman without the consent of the trustee or through court order. Moreover, individuals who were involved in due diligence for the Underwriters, including former Lehman and Bear Stearns employees, are no longer employed by those entities. The Underwriters anticipate difficulty securing the time and attention (and in some instances even locating) former employees who were involved in the underwriting process given the disruption in the financial markets and more particularly, the dislocation within the financial institutions.

Given these unique circumstances, the Underwriters believe that it would be fundamentally unfair, inefficient and expensive to have them submit, at this time, to what Lead Plaintiffs have describe as "wide rang[ing]" discovery. Notwithstanding the above, the Underwriters intend to conduct a search for documents (subject to their objections and responses) that are accessible to them through reasonable and customary searches and review.

**(c) Number of Interrogatories by each party to each other party:**

Lead Plaintiffs have served Interrogatories on Virgin Mobile (11) and the Underwriter Defendants (4 each) in accord with Fed. R. Civ. P. 33, which provides for the service of 25 interrogatories upon a party. Lead Plaintiffs request the Court's leave to be permitted to serve up to a total of 50 interrogatories on each party, in light of the highly complex and document-intensive nature of this litigation involving numerous large corporations.

Defendants object to Lead Plaintiffs' request to serve up to 50 interrogatories on each party as unwarranted and burdensome. Defendants do not anticipate needing to serve more than 25 interrogatories on Lead Plaintiffs at this time.

**(d) Number of Depositions to be taken by each party:**

At the present time, the number of depositions and identities of deponents are not known. Lead Plaintiffs anticipate taking, at a minimum, 25 depositions to include the following:

- A representative of the Company who is knowledgeable about third quarter 2007 results, widening financial loss, subscriber additions, nonpayment of vendors, advertising and budgetary cuts, and overall competition, among other things;

- A representative of Raymond James, Merrill Lynch, Thomas Weisel Partners, Bear Stearns, Sprint Nextel, and Corvina Holdings, regarding *inter alia* any pre-IPO due diligence investigation;

- Each of the Individual Defendants (Daniel H. Schulman, John D. Feehan, Jr., Frances Brandon-Farrow, Mark Poole, Robert Samuelson, and Douglas B. Lynn) with respect to, *inter alia*, their roles in the Company and in the IPO;

- Sir Richard Branson regarding issues, for example, related to the exertion of control upon Virgin Mobile either personally or through Corvina Holdings;

- Analysts who covered Virgin Mobile with respect, *inter alia*, to their coverage of the Company and its stock, as well as any forecasts and guidance they provided to investors;

- Employees and former employees of the Company who can, in part, discuss the Company's financial and operational condition, and who can elaborate on the allegations contained in the Complaint; and,

- Representatives of vendors with whom Virgin Mobile contracted who are able to discuss the nonpayment of invoices prior to the IPO, among other things.

Defendants object to Lead Plaintiffs' request to take 25 depositions as unnecessary and burdensome. Defendants anticipate taking the depositions of (i) each of the five named plaintiffs (Aaron Cheng, Zhao Li, John Mekari, Michael Volpe, and Alan Whiting), (ii) the eight of the unidentified confidential witnesses mentioned in the Complaint, (iii) certain non-party financial institutions that may have performed due diligence on VMU, and (iv) certain non-party research analysts who covered VMU during the relevant time period.

6

    **(e) Expert reports (and disclosure of identities of testifying experts) for Plaintiff and Parties with the burden of proof on an issue due on August 16, 2010.**[1]

    **(f) Defendants' and Parties without the burden of proof on an issue expert report (and disclosure of identities of testifying experts) due on October 15, 2010. Rebuttal opinions thereto by the testifying expert identified in subparagraph (e), above, due on November 15, 2010.**

    **(g) Motions to Amend or to Add Parties to be filed by October 23, 2009.**

    **(h) Dispositive motions are to be served within 45 days of completion of Expert discovery, by January 31, 2011. Any other pretrial motions/ motions *in limine* (including *Daubert/Kumho* motions) are due by February 18, 2011.**

    **(i) Factual discovery as to parties other than the Underwriter Defendants to be completed by June 23, 2010.**

    **(j) Expert discovery to be completed by December 15, 2010.**

    **(k) Set forth any special discovery mechanism or procedure requested, including data preservation orders or protective orders:**

        None at this time.

    **(l) A pretrial conference may take place on January 31, 2011.**

    **(m) Trial by jury or non-jury Trial?**

        Plaintiffs have informed us that they have elected to have a Jury Trial

    **(n) Trial date:** March 21, 2011.

7. **Do you anticipate any discovery problem(s)? Yes  xxxxx    No _____. If so, explain.**

The Underwriter Defendants anticipate encountering substantial discovery problems. The Underwriters' ability to gather evidence in support of their due diligence defense will be impaired by the departure of numerous employees and by the automatic stay that went into effect against Lehman by virtue of its 2008 bankruptcy. Lehman, as a lead underwriter of VMU's IPO, has information that ought to be relevant to the Underwriters in showing that they performed a reasonable investigation of the issuer.

---

[1] The Underwriters are submitting the dates identified in 6(e)-(n) subject to their request that discovery be bifurcated to defer discovery on certain topics.

8. **Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of state witnesses or documents, etc.)? Yes _____ No  xxxxx  . If so, explain.**

9. **State whether this case is appropriate for voluntary arbitration (pursuant to L. Civ. R. 201.1 or otherwise), mediation (pursuant to L. Civ. R. 301.1 or otherwise), appointment of a special master or other special procedure. If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition of dispositive motions, etc.).**

   The parties attempted unsuccessfully to mediate this dispute on June 12, 2009 before the Hon. Layn R. Phillips (Ret.). As discovery progresses, the parties anticipate that further attempts at mediating this dispute may be possible.

10. **Is this case appropriate for bifurcation? Yes   XXXX         No _____**

    As noted above, the Underwriter Defendants believe this case is appropriate for bifurcation.

11. **We [do \_\_\_\_\_ do not  xxxxx ] consent to the trial being conducted by a Magistrate Judge.**

8

Dated:  June 19, 2009

Respectfully submitted,

| | |
|---|---|
| /s/  JEFFREY M. BEYER<br>James M. Altieri<br>Jeffrey M. Beyer<br>**DRINKER BIDDLE & REATH LLP**<br>500 Campus Drive<br>Florham Park, NJ 07932-1047<br>Tel: 973-549-7000<br><br>Michael J. Chepiga<br>James Gamble<br>Christopher Lucht<br>**SIMPSON THACHER & BARTLETT LLP**<br>425 Lexington Avenue<br>New York, NY 10017-3954<br>Tel: 212-455-2000<br><br>*Counsel for Defendants Virgin Mobile USA, Inc. Daniel H. Schulman, John D. Feehan, Jr., Frances Brandon-Farrow, Mark Poole, Robert Samuelson, and Corvina Holdings Limited* | /s/  JEFFREY J. GREENBAUM<br>Jeffrey J. Greenbaum<br>**SILLS CUMMIS & GROSS, P.C.**<br>One Riverfront Plaza<br>Newark, NJ 07102-5400<br>Tel: 973-643-7000<br><br>Robert E. Zimet<br>Susan L. Saltzstein<br>William J. O'Brien<br>**SKADDEN, ARPS, SLATE, MEAGHER & FLOM**<br>Four Times Square<br>New York, NY 10036<br>Tel: 212-735-3000<br><br>*Counsel for Defendants Merrill Lynch Pierce Fenner & Smith, Inc., Bear, Stearns & Co., Inc., Raymond James & Assoc., Inc., and Thomas Weisel Partners, LLC* |

/s/  SALLY J. MULLIGAN
Sally J. Mulligan
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, NJ 07068
Tel: 973-597-2500
Fax: 973-597-2400
smulligan@lowenstein.com

Robert C. Micheletto
Bronson J. Bigelow
**JONES DAY**
222 East 41st Street
New York, NY 10017
Tel: 212-326-3939

*Counsel for Defendants Sprint Nextel Corp. and Douglas B. Lynn*

9