# CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN, P.C.

### COUNSELLORS AT LAW

5 BECKER FARM ROAD
ROSELAND, N.J. 07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com

CHARLES C. CARELLA
BRENDAN T. BYRNE
JOHN N. BAIN
PETER G. STEWART
ELLIOT M. OLSTEIN
ARTHUR T. VANDERBILT, II
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

JAMES D. CECCHI (1933-1995)

JAMES T. BYERS
DONALD F. MICELI
A. RICHARD ROSS
KENNETH L. WINTERS
JEFFREY A. COOPER
CARL R. WOODWARD, III
MELISSA E. FLAX
DENNIS F. GLEASON
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
KHOREN BANDAZIAN
LINDSEY H. TAYLOR

RICHARD K. MATANLE, II
FRANCIS C. HAND
AVRAM S. EULE
RAYMOND W. FISHER
DAVID J. REICH
OF COUNSEL

RAYMOND J. LILLIE
WILLIAM SQUIRE
ALAN J. GRANT°
MARC D. MICELI
RAYMOND E. STAUFFER°
JACOB A. KUBERT
STANLEY J. YELLIN
STEPHEN R. DANEK
ERIC MAGNELLI
DONALD A. ECKLUND
VINCENZO M. MOGAVERO
°MEMBER N.Y. BAR ONLY

November 10, 2009

*VIA CM/ECF AND HAND DELIVERY*
Honorable Madeline Cox Arleo, U.S. Magistrate Judge
United States District Court, District of New Jersey
Courtroom MLK 2A
50 Walnut Street
Newark, NJ 07101

Re:     *In re Virgin Mobile USA IPO Litigation*
        No. 07-cv-05619-SDW-MCA

Dear Judge Arleo:

We write on behalf of Plaintiffs to reply to Defendant Virgin Mobile USA, Inc.'s ("VMU," "Virgin Mobile," or "Company") November 6, 2009 letter to the Court ("Defendant's Letter"). Plaintiffs have divided this letter into the following topics: (a) Plaintiffs' request for dates of employment of former employees; (b) Plaintiffs' request for telephone numbers of former employees; (c) Defendant's Federal Express mailings to former employees and Defendants' request for some type of injunction to further hamper Plaintiffs' ability to speak with former employees and to receive advance notice of employees to be contacted; (d) Plaintiffs' request for additional custodians; and, (e) Plaintiffs' responses to Virgin Mobile's discovery.

## A) Virgin Mobile Should Provide "Dates of Employment" of Terminated Employees

Plaintiffs have requested the "names, titles and dates of employment of any Virgin Mobile employee, director and officer Terminated during the Relevant Time Period." As Defendants state, the Court ordered this information produced at the October 6, 2009 status conference. To date, Defendants have not provided the "dates of

employment" but instead have only provided the dates of termination.    Plaintiffs respectfully request the start dates for former employees.[1]

## B) Virgin Mobile Should Provide Telephone Numbers of Terminated Employees

Defendants acknowledge that the former employees' phone numbers are not privileged, objecting instead on frivolous grounds: (a) that it is no more burdensome for Plaintiffs to gather this information and (b) that the information is not relevant.  Virgin Mobile, in essence, does not want Plaintiffs to contact the former employees. Defendant's Letter at 3 and 4.  As Plaintiffs' noted in the November 2, 2009 letter to the Court, our attempts at locating phone numbers has proved costly, time consuming and have failed to yield all former employees' telephone numbers.  Even since that date, Plaintiffs have made significant efforts to locate the telephone numbers using the addresses provided by Defendants.  We were unable to locate any phone number for approximately 20 of the roughly 120 employees.  Of the nearly 100 possible numbers we have located, only 14 have been confirmed.  Plaintiffs also do not have access to cell phone numbers, which are not typically listed in public records.

On October 21, 2009, Plaintiffs served Request for Production Nos. 1 and 2, which sought, *inter alia*, "Documents sufficient to identify the last known addresses and telephone numbers (home, business, and cell) of the terminated employees."[2]  Telephone numbers are clearly subject to discovery.  *See, for example*, Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring production of telephone numbers).[3]  Virgin Mobile has cited no legal basis for withholding phone numbers.  Indeed, it appears Defendants are making the very argument contemplated by the Court at the October 6 status conference that "what [Defendants are] really saying is I don't want the plaintiffs contacting these folks."  The

---

[1]    There is no longer a dispute as to the addresses of the former employees. Virgin Mobile provided those addresses to Plaintiffs via email approximately 20 minutes *after* Plaintiffs submitted their November 2, 2009 letter to the Court requesting that the Court again order that the addresses be provided.

[2]    Virgin Mobile contends that we requested the addresses and phone numbers of the former employees "for the first time" (Defendant's Letter at 2) when the Fourth Request for Production of Documents was served.  The parties actually had previous meet-and-confers discussing the issue of phone numbers.  Plaintiffs served a formal request when Virgin Mobile informed us that it did not intend to provide phone numbers.

[3]    *See also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1095 (9th Cir. 2007) ("[P]laintiffs needed to find former staff, who could be compelled to testify under oath about what went on.  The interrogatories asked for the names, last known addresses, and phone numbers of former employees, and answers were required by court order."); *Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2008 U.S. Dist. LEXIS 32853, *34-35 (D.N.J. Apr. 22, 2008) ("The defendant can retrieve the names, dates of employment, and compensation history [from their database]....  As such, plaintiff's request for contact information is reasonable, will not unduly burden the defendant, and will facilitate dissemination of the notice in a prompt and efficient fashion.  Therefore, plaintiff's request for contact information...is granted.").

2

Court did not find that to be a viable argument at the status conference.[4] As the Court noted, "[t]here could be admissions in interviews. There could be relevant information about the terminations. There could be documents that they have. There could be a whole range of things." 10/6/09 Hr'g. Tr. at 17:10-14. Plaintiffs are needlessly expending time and resources in attempting to obtain information that Virgin Mobile has in hand. *See* Fed. R. Civ. P. 34(b)(2)(A) (noting that the Court can order a shorter time to respond). Plaintiffs request that the Court order that the phone numbers be produced without delay.

**C)  The Court Should Deny Virgin Mobile's Request To Further Hamper Plaintiffs' Ability To Contact Former Employees and To Provide Advance Notice To Defendants of Such Contacts**

Plaintiffs recently discovered that Defendants rushed out, *via* Federal Express, letters to former employees in an apparent attempt to dissuade them from speaking with Plaintiffs or their investigators. Virgin Mobile's general counsel sent these letters on October 28, 2009 (*see* Exhibit 3 to Defendant's Letter) – two business days before Virgin Mobile provided Plaintiffs with the addresses of the former employees and eight days *after* the Court-ordered deadline for providing that information had passed. Plaintiffs are troubled by this timing. Plaintiffs served interrogatories and document requests to Virgin Mobile and simultaneously sent a letter to Virgin Mobile concerning this matter, requesting a response by November 9, 2009. *See* 11/4/09 Letter from K. Miller, attached as Exhibit A. We received no response from the Defendants on this matter – instead Defendants provided an "example of one of those letters" in their submission to the Court, making no mention of the facts and circumstances surrounding Plaintiffs' uncovering of this issue. At the conference with the Court, we would like to confirm that Defendants will timely provide the requested information, including copies and drafts of each letter sent to any former employee on this issue.

To further their efforts to silence former employees, Virgin Mobile advances unprecedented and baseless requests that the Court hamper Plaintiffs' right to converse with these former employees. Despite the fact that there is no indication whatsoever that Plaintiffs have violated any ethical rule, Virgin Mobile has requested that the Court preemptively order that the Plaintiffs "comply with their ethical obligations." In conjunction with this request, Virgin Mobile seeks an apparent injunction order to require Plaintiffs (and their investigators) to: (a) "identify themselves before asking questions as representatives of plaintiffs in a lawsuit filed against VMU and claiming that VMU and its former management *committed securities fraud*" (emphasis added); (b) "inform the individual that he or she is not obligated to answer any questions"; (c) "tell the individual that the questioner is not seeking information that the former employee is prohibited from

---

[4]        *See Judd v. Take-Two Interactive Software, Inc.*, No. 07 Civ. 7932 (GEL), 2008 U.S. Dist. LEXIS 26920, at *2-3 (S.D.N.Y. Apr. 3, 2008) (noting with respect to former employees of an adverse party that "[i]t is consistent with time-honored and decision-honored principles . . . that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made.") (quoting *G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 533 (S.D.N.Y. 2001)).

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION

disclosing under any employment or confidentiality agreements"; and, (d) inquire whether the former employee had "responsibility for or significant involvement with the litigation itself or with the specific issues raised in the complaint."[5] There is simply no reason for the Court to issue a mandate to restrict the procedure by which Plaintiffs interview potential witnesses.

VMU further contends that Plaintiffs should "terminate" the questioning of any employee at any level of the Company who claims to have "significant involvement… with the specific issues raised in the complaint." Defendants further seek to require Plaintiffs to have a "person-by-person discussion" with VMU regarding "what Plaintiffs believe the individual can contribute with respect to this litigation" so that VMU can make a determination as to whether that individual "is a member of the control group and, therefore, deemed represented by VMU's counsel." Defendant's Letter at 7. In plain terms, Virgin Mobile is requesting the untenable: that Plaintiffs inform them of who our key witnesses are before Plaintiffs have the opportunity to speak with them.

In making such a far-reaching request, VMU attempts to classify every former employee with any information regarding the acts alleged in the Complaint as members of its litigation control group. In doing so, VMU cites *In re The Prudential Insurance Co. of America Sales Practices Litigation*, 911 F. Supp. 148, 153 (D.N.J. 1995) and *Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77, 78 (D.N.J. 1991). These two cases apply an outdated version of RPC 4.2[6], "interim guidelines" set by a now inapplicable order, and outdated comments to the ABA model rules. RPC 4.2 was amended soon after these cases. *See, e.g., Apple Corps v. International Collectors Soc'y*, 15 F. Supp. 2d 456, 474 n. 20 (D.N.J. 1998) (**"In so amending RPC 4.2, New Jersey rejected the test applied in *In re Prudential*,** 911 F. Supp. 148, based on whether an employee's conduct may directly impute liability to the corporation.") (Emphasis added).

Indeed, the court in *Prudential* created the test cited by Defendants in order to provide guidance to the words "'**management of**' the case or matter at issue" which defined the litigation control group in Opinion 688. *Id.* at 153 (Emphasis Added). This definition was long ago changed from "management of," in Opinion 688, to the much more limited language which now appears in Rule 1.13(a), which defines the litigation control group as "employees responsible for, or significantly involved in, **the determination of the**

---

[5]     With respect to the first request, obviously Plaintiffs do not allege that Defendants "committed securities fraud" and should not be mandated to make such a misstatement. *See* Complaint; 3/9/09 Motion to Dismiss Hr'g Tr. at 89:21-22 ("What has been clearly indicated by the plaintiffs, and the Court has to accept it as true, [is] that this is not a fraud case."). With respect to the third request, Plaintiffs have no idea which former employees, if any, are subject to any confidentiality agreement or even if such an agreement exists. Even if Plaintiffs have such information, Plaintiffs are not party to such agreement and have no obligations under it.

[6]     The language of RPC 4.2, as amended effective September 1, 1996, states that: "[A] lawyer shall not communicate about the subject of the representation with a person the lawyer knows or by the exercise of reasonable diligence should know to be represented by another lawyer in the matter including members of an organization's litigation control group as defined by RPC 1.13 unless the lawyer has the consent of the other lawyer, or is authorized by law to do so[.]"

**organization's legal position** in the matter whether or not in litigation," further noting that **"significant involvement" requires involvement greater, and other than, the supplying of factual information or data respecting the matter."** (Emphasis added). *See Michaels v. Woodland*, 988 F. Supp. 468, 472 (D.N.J. 1997) (noting that fact witnesses "were of the type specifically excluded by the Committee when it declined to define the litigation control group in terms of the "subject matter of the controversy" and finding that witnesses who were "involved only in the subject of the litigation" were not members of the control group.).

When assessing whether the former employees fall into the litigation control group, **"the key is not the agent's or employee's status but role in determining the organization's legal position."** *Andrews v. Goodyear Tire* & Rubber Co., 191 F.R.D. 59, 75 (D.N.J. 2000) (quoting the report of the Special Committee on RPC 4.2: *Notices to the Bar*, 139 N.J.L.J. 1161, 1193 (March 20, 1995)). As the court plainly recognized in *Apple Corps*, 15 F. Supp. 2d at 474 (citations omitted):

> It is not the purpose of [RPC 4.2] to protect a corporate party from the revelation of prejudicial facts.". . . Rule 4.2 must "remain[] a rule of ethics, rather than of corporate immunity" and to read the rule expansively would "stifle[] the truth-seeking function of courts and treat[] corporate employees as a form of company property.

Virgin Mobile's attempt to force Plaintiffs to advise the former employees that they are somehow bound by VMU's code of conduct or a confidentiality agreement is baffling. Plaintiffs have no idea whether any confidentiality agreements exist or how a *former* Company employee could possibly be bound by any code of conduct. Plaintiffs of course do not represent these former employees; yet VMU seems to suggest that Plaintiffs should be mandated to dispense unsolicited legal advice to non-clients regarding matters to which we are not privy. The courts in *Sullivan* and *In re Environmental Ins. Declaratory Judgment Actions*, 600 A.2d 165, 173 (N.J. Super. Ct. Law Div. 1991), cited by Defendants, did *not* create any obligation to inform former employees of a purported code of conduct or confidentiality agreement.[7]

### D) Plaintiffs' Request for Additional Custodians

On October 16, 2009, Virgin Mobile produced organizational charts. Plaintiffs determined, upon review, that Virgin Mobile took a surprisingly limited view of which individuals could potentially have relevant information. For instance, Virgin Mobile

---

[7] While the court in *Neil S. Sullivan Associates, Ltd. v. Medco Containment Services, Inc.*, 607 A.2d 1386 1389-90 (N.J. Super. Ct. Law Div. 1992), stated that the plaintiff's attorney may not seek to elicit any "privileged information," the information the court was referring to was "the privilege attaching to attorney-client communications to the extent his or her communications as a former employee with his or her former employer's counsel are protected by the privilege."

failed to include as a custodian anyone with a title bearing "Human Resources" or "Churn Forecasting."[8]

Armed only with the names and titles of the various employees, on October 20, 2009, Plaintiffs sent Virgin Mobile a request to add 53 individuals and for Virgin Mobile to select two other employees from each of six departments. To be clear, Plaintiffs expected that the list of requested additional custodians would be trimmed after conferring with Virgin Mobile.[9]

Plaintiffs' request to compel the addition of custodians is ripe and properly before the Court. *See* Defendant's Letter at 8-9. As Virgin Mobile admits, numerous meet and confer calls have been held and letters exchanged. Defendant's Letter at 8. The parties had a meet and confer call regarding custodians on October 30, 2009. On that call, little progress was made. Plaintiffs informed VMU that we were happy to continue a dialogue regarding custodians, but we thought it appropriate to seek the guidance of the Court, rather than delay discovery any further. Virgin Mobile indicated that Defendants understood that Plaintiffs would submit a letter to the Court, but expressed interest in speaking early the following week to continue discussions about custodians. On the parties' November 4, 2009 call to discuss issues regarding search terms, Plaintiffs inquired as to whether VMU would like to have a meet and confer call regarding custodians, as we had discussed on our previous call. Counsel for Virgin Mobile simply stated that the meet and confer process on that issue had ended by virtue of Plaintiffs' filing of the letter with the Court two days prior.[10] The parties have not met and conferred since on the custodian issue.

---

[8]     On the parties' October 30 meet and confer call regarding custodians, the parties engaged in a fairly lengthy discussion regarding forecasting employees. VMU asserted that *none* of the forecasting employees would be added as custodians because Plaintiffs did not make any allegations that Defendants issued forecasts that were materially false and misleading. Defendant's Letter at 12. Plaintiffs were perplexed. VMU claimed that even if an employee in forecasting had documents which evidenced that the Company had forecasts in August, for example, showing that the third quarter was going poorly or that subscriber growth was already falling – such information would be irrelevant. Plaintiffs vigorously disagreed with this position, citing paragraphs of the Complaint that specifically allege the Company was able to forecast, had specialized forecasting software, and conducted frequent revenue monitoring and forecasting, and that it therefore had the alleged undisclosed information at hand. Virgin Mobile still maintained that any employee with the word "forecasting" in their title could not be relevant.

[9]     In footnote 8 of their Letter, VMU states that 18 of the requested custodians have left the Company. In a case like this – where layoffs and downsizing in certain departments, such as marketing, are central to Plaintiffs' case – some of the best custodians with many responsive documents are undoubtedly terminated employees. It would be an absurd result if Virgin Mobile could conveniently remove from a list of custodians all former employees on the basis that they are simply too much trouble.

[10]     Plaintiffs dispute that "VMU's counsel explained to Plaintiffs the job responsibilities of each of the requested custodians, and why they are not appropriate document custodians" and that Plaintiffs "completely disregarded" the request that we provide an explanation as to why the additional custodians were justified. Defendant's Letter at 8. This is a blatant mischaracterization of the parties' call. Virgin Mobile's fundamental position on that call was that mid-level and low-level employees are not appropriate custodians because the Vice Presidents and Officers in charge of their respective divisions would have all of the information received and/or created by those lower level employees, including drafts. Plaintiffs do not believe this to be a logical assumption. Plaintiffs repeatedly asked Virgin Mobile to identify the

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION

In the custodian context, *Virgin Mobile* is saddled with the burden to demonstrate undue burden on the custodian issue:

> Although the EMI Labels may have increased the size of the group that they are asking to have searched, ***MP3tunes has not shown that the production of all of the requested employees' email communications would be unduly burdensome or that a search of their files would not potentially yield relevant information.*** MP3tunes is therefore directed to search the email files of each of the custodians identified by the Plaintiffs. (Emphasis added).

*Capitol Records, Inc, v. MP3tunes, LLC*, No. 07-9931, 2009 U.S. Dist. LEXIS 73447, at *23 (S.D.N.Y. Aug, 13, 2009). Virgin Mobile appears to think that all Plaintiffs will need to prosecute this case is information from the 21 high-level custodians *they* have identified. Plaintiffs' request to add lower-level employees as custodians is not only reasonable but, in Plaintiffs' view, essential to avoid missing many – if not the most important – responsive documents. *See Capitol Records, Inc, v. MP3tunes, LLC*, No. 07-9931, 2009 U.S. Dist. LEXIS 73447, at *20-*23 (S.D.N.Y. Aug, 13, 2009) ("With respect to the issue of ***custodians***, it may well be, as MP3tunes argues, that only the more senior present or former MP3tunes employees sent or received emails that are relevant to the issues in this case. ***By the same token, however, it also may be true that employees at that level took care not to say anything incriminating and that lower-level employees were less guarded in their email communications.***") (emphasis added).[11]

Virgin Mobile is attempting to improperly shift the burden to Plaintiffs on custodians and even makes the bizarre argument that Plaintiffs should be required to review the documents already produced to make a determination as to which custodian would have relevant information. Defendant's Letter at 8. Because Virgin Mobile never produced any of the putative custodians' documents, such an assessment would be futile at best.

---

custodians that they believed were inappropriate *based on their substantive work duties.* Virgin Mobile was able to do so for only a few employees. As a result of the few descriptions provided by Virgin Mobile, Plaintiffs eliminated two proposed custodians – a person who worked in "customer experience" and a person who worked in "tax planning & compliance." Plaintiffs have since discovered, however, that employees in customer experience were instrumental in some of the key areas to this case, and were responsible for tasks such as creating financial presentations and customer forecasting.

[11]    Moreover, the standard is whether requested discovery is relevant *or likely to lead to the discovery* of admissible evidence. Fed. R. Civ. P. 26(b)(1). To state that none of the requested custodians can meet this standard is extraordinarily improbable. Virgin Mobile's citation to *Bellinger v. Astrue*, No. 06-321, 2009 WL 2496476, at *4 (E.D.N.Y. Aug. 14, 2009), is unremarkable given that *Capitol Records* is far more analogous to the instant matter in that *Capitol* addressed the issue of custodians, as here. *Bellinger* involved files that were, as Virgin Mobile notes "already produced." Here, and in accord with *Capitol Records*, there is no indication that dialogue among, or work created by, mid-or low-level employees would necessarily be produced through the documents of the 21 high-level custodians identified by Virgin Mobile.

### E) <u>Plaintiffs' Responses to Virgin Mobile's Discovery</u>

**Brokerage Statements and Tax Returns**

Plaintiffs have produced the trading transaction records for each individual of the Volpe Group. While we felt this documentation of trades was sufficient, Plaintiffs nevertheless agreed to provide brokerage statements in Plaintiffs' possession on a rolling basis. *See* October 30, 2009, email from P. Balanon to S. Dunn (copying T. Ling), attached hereto as Exhibit B (noting that documents would be provided on a rolling basis and, notably, no response from Virgin Mobile objecting to this arrangement). Plaintiffs do not believe there is a dispute here.

Virgin Mobile argues that Plaintiffs should produce their tax returns, despite the fact the parties have not even met and conferred on this issue. Defendant's Letter at 14. Regardless, Plaintiffs fail to see any relevance of tax returns and believe the request is made to harass Plaintiffs. *Wiggins v. Clementon Police Dep't.*, No. 07-5033, 2009 U.S. Dist. LEXIS 66955, at *11 (D.N.J. July 30, 2009) (noting that courts have "generally refused to compel disclosure of income tax returns or related information from litigants who have not put their own income at issue.") (citation omitted); *Funke v. Life Fin. Corp.*, No. 99-11877, 2003 U.S. Dist. LEXIS 5418, at *5 (S.D.N.Y. Apr. 3, 2003) ("The court agrees with plaintiffs that unless defendants can provide a good faith basis for believing the information provided in plaintiffs' 'limited production,' [] is not 'sufficient to identify all of their respective purchases, sales, and present holdings of [the company's] securities,' [] they are not entitled to plaintiffs' tax returns, even in redacted form.").

**Information Regarding Plaintiffs' "Investment Strategy"**

Defendants contend that discovery related to "investment strategy" is relevant both with respect to ascertaining the adequacy of the class representatives and as a possible basis to assert an affirmative defense. Defendant's Letter to the Court at 15. To the contrary, in this Section 11 case, documents related to investments, ***other than in Virgin Mobile securities***, are neither relevant nor likely to lead to the discovery of admissible evidence. *Funke v. Life Fin. Corp.*, No. 99-11877, 2003 U.S. Dist. LEXIS 5418, at *5-*6 (S.D.N.Y. Apr. 3, 2003); *Weiss v. Blech*, No. 95-6422, 1997 U.S. Dist. LEXIS 11701, at *7-*9 (S.D.N.Y. Aug. 11, 1997); *see also Degulis v. LXR Biotech.*, 176 F.R.D. 123, 126 (S.D.N.Y. 1997) (confirming that a discovery request related to "investment sophistication and strategy" is irrelevant in a Section 11 case, as opposed to a Section 10(b) case).[12] Plaintiffs have provided documents related to their transactions in Virgin Mobile securities. This is sufficient and, thus, Plaintiffs object to providing documents regarding their transactions with wholly unrelated companies.

---

[12] *See also Kusner v. First Penn. Corp.*, 531 F.2d 1234, 1240 (3d Cir. 1976). "Neither reliance nor a causal connection between the drop in value of the security and the false or misleading registration statement is an element of a section 11 action."

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION

Virgin Mobile's cited cases are inapposite.[13] *APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 476 F.3d 1261 (11th Cir. 2007), involved a pre-registration purchase commitment of sophisticated "insider" investors which, as the appeals court noted, rendered reliance "impossible." *Id.*, at 1272. Indeed, Virgin Mobile's parenthetical expressly notes this distinction: "we hold that the Section 11 presumption of reliance does not apply…where *sophisticated investors*…make a binding investment commitment *months before* the filing of a defective registration statement." Defendant's Letter at 15 (citing *APA Excelsior*, 476 F.3d at 1277 (emphasis added)). No such factual circumstance is present here; all Plaintiffs purchased their shares after the effective date of the Registration Statement. The Virgin Mobile initial public offering took place on October 10, 2007. As noted in Plaintiffs' certifications, attached to the Volpe Group's motion for appointment as Lead Plaintiff, each of the individuals within the Volpe Group purchased their shares of Virgin Mobile *after* October 10, 2007. Rec. Doc. No. 15-4; *see also APA Excelsior*, 476 F.3d at 1273 ("In drafting Section 11, it appears that Congress assumed that only those who acquired their stock *after* the effective date of the registration statement would be affected by material defects, and it simply eliminated the requirement that they must prove that they had read and relied upon the defective registration statement.").[14]

## Discovery Related to "Awareness" of "Events, Acts, or Omissions"

Plaintiffs confirmed that other than those documents already produced (and Plaintiffs' brokerage statements which are being produced to the extent they are in Plaintiffs' possession), they have no other responsive documents.

\* \* \* \* \*

For the reasons explained above, Plaintiffs respectfully move that the Court Order: (a) Virgin Mobile to produce the former employees' dates of employment and telephone numbers; (b) Virgin Mobile to add additional custodians; (c) deny Virgin

---

[13] Virgin Mobile also cites *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 634 (S.D.N.Y. 2007). Defendant's Letter at 15. That case was decided on a Fed. R. Civ. P. 12(b)(6) motion and seemed only to affirm the rule laid out in *APA Excelsior* that a plaintiff does not rely on the misleading registration statement if the investment decision was made prior to its issuance.

[14] Virgin Mobile obliquely refers to *Brody v. Zix Corp.*, No. 04-1931, 2007 U.S. Dist. LEXIS 38230, 2007 WL 1544638, at *2 (N.D. Tex. May 25, 2007), to prop-up their position that discovery related to "investment strategies" is relevant. Defendant's Letter to the Court at 14. That case is unhelpful. *Brody* was a Section 10(b) case in which reliance is an element of the claim, unlike here. *Cf.*, *In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 566 (D.N.J. 2005) (noting, in a Section 10(b) case in the *class certification context* that information related to plaintiffs' "investment strategy" has "little bearing on [their] ability to prosecute the losses specific to this case."). Therefore, in the face of the reliance element of the Section 10(b) claim, plaintiffs in *Brody* never challenged whether discovery related to "investment strategies" was relevant.

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION

Mobile's request for an injunction regarding Plaintiffs' contacts with former employees; and (d) deny Virgin Mobile's requests related to Plaintiffs' "investment strategy" and "tax returns."

Respectfully submitted,

/s/ *James E. Cecchi*

James E. Cecchi

cc:   All Counsel of Record (via CM/ECF)

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION

# EXHIBIT A



| PARTNERS | OF COUNSEL | ASSOCIATES |
|---|---|---|
| Charles C. Foti, Jr., LA | Neil Rothstein, PA | Paul S. Balanon, LA, MD, & D.C. |
| Lewis S. Kahn, LA | | Sarah Catherine Boone, MT |
| Kim E. Miller, NY & CA | | Melissa Ryan Clark, NY |
| Albert M. Myers, NY & GA | | Michael A. McGuane, NY |
| Kevin L. Oufnac, LA & SC | | George S. Mentz, LA |
| Michael A. Swick, NY | | |

November 4, 2009

*__Via Electronic Mail__*
James Gamble, Esq.
**SIMPSON THACHER &**
**BARTLETT LLP**
425 Lexington Avenue
New York, NY 10017-3954

      Re:   *In re Virgin Mobile USA IPO Litig.*
              Civ. No. 07-5619 (D.N.J.)

Dear Jamie:

      Plaintiffs recently learned that Virgin Mobile apparently has taken steps to contact Terminated employees identified in VMU-12885 to VMU-12887. We have been informed that Federal Express packages referencing the Virgin Mobile Code of Conduct and addressing potential contact from attorneys may have been sent to such persons.

      These mailings appear to have been prepared and sent at around the same time that Defendants improperly withheld the titles and street addresses of these persons for thirteen days beyond a Court-ordered deadline to produce them. Indeed, the titles and street addresses were *not* produced until shortly after Plaintiffs filed via ECF on November 2, 2009 a letter to Judge Arleo requesting a discovery conference for an Order that the titles and street addresses, along with phone numbers, for the Terminated employees be produced without further delay.

      Obviously, these letters have a direct impact on our ongoing, intensive efforts to speak with these potential witnesses regarding, *inter alia*, the allegations of the Complaint. In light of the foregoing, although Plaintiffs are serving the formal Interrogatories and a Request for Production of Documents attached hereto, we seek Defendants' cooperation in providing the requested information no later than noon (Eastern) on Monday, November 9, 2009, so that Plaintiffs can confirm that nothing improper has occurred.

      Given that the letters were prepared by the Company, or its counsel, very recently, there is no burden on the Company in turning over this information promptly so that we can put this

James Gamble, Esq.
November 4, 2009
Page 2 of 2


matter to rest.  If Defendants refuse to comply with this request, we will seek to add it to the agenda of the anticipated conference with Judge Arleo.


Very Truly Yours,

Kim E. Miller


cc:     All Defense Counsel
        James Cecchi, Esq.
        Paul Balanon, Esq.
        Melissa Clark, Esq.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: VIRGIN MOBILE USA IPO LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 07-05619 (SDW)<br>(Securities Class Action) |

## <u>PLAINTIFFS' THIRD SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT VIRGIN MOBILE USA, INC.</u>

TO:       Virgin Mobile USA, Inc.

THROUGH:  Michael J. Chepiga
           James Gamble
           Christopher Lucht
           Thomas Ling
           Sarah Dunn
           Linton Mann, III
           **SIMPSON THACHER & BARTLETT LLP**
           425 Lexington Avenue
           New York, NY 10017-3954
           Tel: 212-455-2000
           Fax: 212-455-2502

           James M. Altieri
           Jeffrey Beyer
           **DRINKER BIDDLE & REATH LLP**
           500 Campus Drive
           Florham Park, NJ 07932-1047
           Tel: 973-360-1100

1

Plaintiffs, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, through undersigned counsel, propound this Third Set of Interrogatories to Defendant Virgin Mobile USA, Inc. ("Virgin Mobile"), and within the time to respond pursuant to Rule 33 of the Federal Rules of Civil Procedure, or as otherwise agreed by counsel or ordered by the Court, request that each Interrogatory be answered separately, fully, in writing, and under oath. Responses to these Interrogatories should be served upon Kahn Swick & Foti, LLC, 650 Poydras Street, Suite 2150, New Orleans, Louisiana 70130. Your responses to these interrogatories can additionally be emailed to kim.miller@ksfcounsel.com *and* paul.balanon@ksfcounsel.com.

## DEFINITIONS

A)     "Communication" shall mean or refer to any transmission or receipt of information by any means including, without limitation, through written, oral, pictorial, or electronic means, or through any correspondence, *Document*, or conversation.

B)     "Document" shall mean or refer to the original or copy of all written, printed, typed, recorded, or graphic material of any kind or character, whether or not in the actual or constructive possession, custody, or control of Virgin Mobile. The term Document shall include, without limitation, electronically-stored information, data compilations (from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form), *emails and attachments thereto*, drafts, letters, Communication, memoranda, records, minutes, statements, notes, and all information memorialized in any manner.

C)     "Identify" shall mean:

1) When used in reference to a <u>Document</u>, to state the type of Document (*e.g.*, letter, memorandum, telegram, chart, etc.), its author and originator, its date or dates, all addressees and recipients, and its present location or custodian;

2

2) When used in reference to a <u>natural person</u>, to state the person's full name, current residence and business addresses, current residence and business telephone numbers and, if applicable, his or her title, dates of employment, and job description. If current addresses are unknown, provide the last known business and residence address; and,

3) When used in reference to an <u>entity</u>, to state the name, address, and telephone number of the entity.

D)   "You" and "Your" shall mean or refer to Virgin Mobile. This definition shall include any subsidiary, director, officer, employee, agent, partner, principal, or person working or acting on behalf of Virgin Mobile.

E)   "Terminate" shall mean reduce in force, resign, fire, or lay off.

F)   In determining the meaning of any definition, whether capitalized or not, and whether included in this Definitions section or otherwise:

1) Words importing the singular include the plural and words importing the plural include the singular.

2) Words importing the masculine gender include the feminine and words importing the feminine gender include the masculine.

3) Words used in the present tense include the future as well as the past tenses.

4) The words "and" or "or" are terms of inclusion and not of exclusion. Each word should be construed either disjunctively or conjunctively, as necessary, to bring within its scope information that otherwise might be construed to be outside its scope.

## INSTRUCTIONS

A)   These Interrogatories are continuing in nature to the fullest extent allowed by law. Accordingly, if after responding to any of these Interrogatories, You become aware of any further information pertaining to a particular Interrogatory, You are to serve upon Plaintiffs a supplemental response providing such further information.

3

B)    In answering these Interrogatories, furnish such information as is available to You, regardless of whether this information is obtained directly by You, through Your agents or representatives, or by any of Your attorneys. If any of these Interrogatories cannot be answered in full, after exercising due diligence to secure the information requested, answer to the fullest extent possible, specifying the reasons for Your inability to answer the remainder, and state whatever information or knowledge You have concerning the unanswered portion or portions.

C)    If You object to any of these Interrogatories because You contend it seeks information that falls within any privilege, the work product doctrine, or an immunity, please provide the following information as to each such objection:

    1)  The nature of the objection, privilege, doctrine, or immunity that You claim, and all legal and factual bases supporting such claim.

    2)  If a Document is involved, Identify the Document; provide the date, author, recipient, person(s) to whom copies were furnished together with their job titles; subject matter; the person(s) on whose behalf the objection, privilege, doctrine, or immunity is asserted; and the request to which such Document responds.

    3)  If a Communication is involved, describe the substance of the Communication; the person(s) on whose behalf the objection, privilege, doctrine, or immunity is asserted; and each and every person, if any, known to You to whom the substance of the Communication has been disclosed.

D)    With respect to any Interrogatory calling for the identification or listing of Documents, You may attach the Documents to the Interrogatory to which they are responsive. Please produce each such Document in a manner that preserves its sequential relationship with other Documents being produced, including the file folder, and folder tabs associated with its file location, and if not apparent on the folder or tabs, accompanied by identification of the person or department from whose files it was taken, and such additional source information as is necessary to enable the parties to determine the Document's original pre-production location.

4

## INTERROGATORIES

### INTERROGATORY NO. 1:

State verbatim the language of the Virgin Mobile Code of Conduct to which any Terminated employee identified on VMU-12885 to VMU-12887 may be subject.

### INTERROGATORY NO. 2:

Identify all Documents, and the substance thereof, that Virgin Mobile sent to any Terminated employee identified on VMU-12885 to VMU-12887, and Identify the date(s) such Documents were sent.

### INTERROGATORY NO. 3:

State whether Virgin Mobile has had any Communication with any Terminated employee identified on VMU-12885 to VMU-12887 regarding this lawsuit or the allegations of the Complaint. For each such Communication, state: (a) the name of the Terminated employee; (b) the date of the Communication; (c) the name and title of the Virgin Mobile employee who contacted the Terminated employee; and, (d) the substance of such Communication.

## REQUEST FOR DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Please produce all Documents and Communications You reviewed, used, referenced, or relied upon in responding to the Third Set of Interrogatories and Request for Production of Documents to Defendant Virgin Mobile USA, Inc.

### REQUEST FOR PRODUCTION NO. 2:

Please produce the Virgin Mobile Code of Conduct applicable to each and all of the Terminated employees identified on VMU-12885 to VMU-12887.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce all Documents and Communications sent to or received from any

Terminated employee identified on VMU-12885 to VMU-12887 that relate to this lawsuit or the

allegations of the Complaint, from their respective date(s) of Termination to the day You

respond to this Request for Production No. 4.

Dated: November 4, 2009                                KAHN SWICK & FOTI, LLC

                                                       /s/ Kim E. Miller
                                                       Kim E. Miller, *pro hac vice*
                                                       Melissa Ryan Clark, *pro hac vice*
                                                       Michael McGuane
                                                       12 East 41st Street, 12th Floor
                                                       New York, New York 10017
                                                       Telephone: (212) 696-3730
                                                       Facsimile: (504) 455-1498

                                                              -and-

                                                       Lewis S. Kahn, *pro hac vice*
                                                       Paul S. Balanon, *pro hac vice*
                                                       KAHN SWICK & FOTI, LLC
                                                       650 Poydras Street, Suite 2150
                                                       New Orleans, Louisiana 70130
                                                       Telephone: (504) 455-1400
                                                       Facsimile: (504) 455-1498

                                                       James E. Cecchi
                                                       Lindsey H. Taylor
                                                       CARELLA, BYRNE, BAIN, GILFILLAN,
                                                       CECCHI, STEWART & OLSTEIN
                                                       5 Becker Farm Road
                                                       Roseland, New Jersey 07068
                                                       Telephone: (973) 994-1700

                                                       *Co-Lead Counsel for Lead Plaintiffs*
                                                       *and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that this Third Set of Interrogatories and Request for Production of Documents was served on all parties to this litigation by electronic mail or United States mail on November 4, 2009.

/s/ Kim E. Miller
Kim E. Miller

# EXHIBIT B

## Melissa Clark

**From:** Paul Balanon [paul.balanon@ksfcounsel.com]
**Sent:** Friday, October 30, 2009 11:18 AM
**To:** Sdunn@stblaw.com
**Cc:** melissa.clark@ksfcounsel.com; 'Ling, Thomas'
**Subject:** Virgin Mobile

Sarah,

Regarding your October 28 letter, we are working on amended interrogatory responses and gathering responsive documents (including brokerage statements). Plaintiffs will produce documents on a rolling basis, which we expect to have completed within the next few weeks.

Paul S. Balanon | Attorney-at-Law

Kahn Swick & Foti, LLC
650 Poydras Street, Suite 2150 | New Orleans, Louisiana 70130
direct + 504 648 1843 | fax + 504 455 1498
office + 504 455 1400 | paul.balanon@ksfcounsel.com

This email and any attachments thereto may contain private, confidential and privileged material for the sole use of the intended recipient. Any unauthorized use, review, copying, disclosure or distribution of this email (or any attachments thereto) is strictly prohibited. If you are not the intended recipient, please contact the sender immediately, permanently delete the original and any attachments, and destroy all copies.