**DrinkerBiddle&Reath**
L L P

James M. Altieri
973-549-7060 Direct
james.altieri@dbr.com

Law Offices

500 Campus Drive
Florham Park, NJ
07932-1047

973-360-1100 phone
973-360-9831 fax
www.drinkerbiddle.com

A Delaware Limited
Liability Partnership

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

Edward A. Gramigna, Jr.
Partner responsible for
Florham Park Office

Established 1849

November 19, 2009

**VIA CM/ECF AND FEDERAL EXPRESS**

Honorable Madeline Cox Arleo, U.S. Magistrate Judge
United States District Court, District of New Jersey
Courtroom MLK 2A
Martin Luther King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:   *In re Virgin Mobile USA IPO Litigation, No. 07-cv-05619-SDW-MCA*

Dear Judge Arleo:

We write on behalf of Virgin Mobile USA, Inc. ("VMU") in response to Plaintiffs' November 10, 2009 letter to this Court ("Pls. Ltr.").

**Plaintiffs' Request for the Telephone Numbers of VMU's Former Employees**

Plaintiffs argue that VMU should be compelled to produce the telephone numbers of its former employees. However, the cases cited by Plaintiffs in support of their request that VMU be compelled to disclose the telephone numbers are easily distinguishable from the facts here. In *Connecticut General Life Insurance Co. v. New Images of Beverly Hills*, the defendant was ordered to produce telephone numbers because it had intentionally "hid the identities and location of former employees by providing no addresses or phone numbers, and listing some [employees] only by first name or nickname." 482 F.3d 1091, 1095 (9th Cir. 2007). Here, VMU has produced the former employees' names and addresses, as well as positions, departments and employment dates. Plaintiffs have more than enough information to contact VMU's former employees, and as noted below and in VMU's November 6 letter ("VMU's Ltr."), have already contacted several of these individuals.

Plaintiffs also cite *Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 32853 (D.N.J. Apr. 22, 2008). Therein, the court ordered defendant to provide phone numbers of their former employees in order for plaintiffs to provide timely judicial notice to the former employees, who were potential plaintiffs in a collective action under the Fair Labor Standards Act. *Id.* at *34-35. Here, Plaintiffs are not seeking to notify potential members of the class, which has yet to be certified.

Finally, Plaintiffs cite *Judd v. Take-Two Interactive Software, Inc.*, No. 07 Civ. 7932 (GEL), 2008 U.S. Dist. LEXIS 26920 (S.D.N.Y. Apr. 3, 2008), to support their

DrinkerBiddle&Reath

Honorable Madeline Cox Arleo
November 19, 2009
Page 2

claim that they have the right to interview VMU's former employees. As a general matter, VMU does not dispute that Plaintiffs may contact VMU's former employees, subject to ethical obligations and certain other limitations. However, as explained in VMU's November 6 letter to this Court, VMU is concerned that its former employees, who are third parties to this action, will be unduly harassed by Plaintiffs' fishing expedition. *See* VMU's Ltr. at 4-7. The *Judd* case cited by Plaintiffs addresses VMU's concerns, directing that:

> In conducting any *ex parte* interviews, the Court expects that plaintiff's attorneys would advise any interviewee of the attorneys' representation and interest in the ongoing litigation, and would direct the former employee to avoid disclosing privileged or confidential information, and would ensure that the interviewee understands those admonitions before conducting the interview.

2008 U.S. Dist. LEXIS 26920 at *2-3. For the reasons explained below and in VMU's November 6 letter, VMU respectfully requests that the Court order Plaintiffs to comply with their ethical obligations when contacting VMU's former employees.

**Plaintiffs' Contact with Former Employees**

Plaintiffs claim that VMU is attempting to "hamper" its right to converse with VMU's former employees by asking this Court to order Plaintiffs to comply with their ethical obligations and argue that there is "simply no reason for the Court to issue a mandate to restrict the procedure by which Plaintiffs interview potential witnesses." *See* Pls. Ltr. at 4. But Plaintiffs' letter ignores the ethical rules and cases cited by VMU relating to contact with unrepresented persons. *See* VMU's Ltr. at 5-6. Given that VMU has received complaints from its former employees relating to telephone calls received from Plaintiffs and/or their representatives, it is entirely appropriate for this Court to set guidelines for Plaintiffs to follow when engaging in *ex parte* communications with unrepresented persons.

DrinkerBiddle&Reath
L L P

Honorable Madeline Cox Arleo
November 19, 2009
Page 3

Plaintiffs' argument focuses on the "litigation control group" issue.[1] To be clear, VMU does not believe any of the former employees to be entitled to speak on behalf of or make admissions attributable to VMU. VMU does not consider any of these former employees members of the control group. If Plaintiffs concede that no statement made by any of these individuals can be attributed to VMU or be considered an admission by VMU, then there is no issue in dispute. If, however, after asking foundational questions *Plaintiffs* believe that any of these former employees was responsible for, or significantly involved in, the determination of VMU's legal position, whether or not in the litigation, or held a position of sufficient authority that Plaintiffs plan to assert that a statement made by that former employee is an admission by or statement of VMU, then Plaintiffs would be required to treat those individuals as represented by VMU's counsel. Plaintiffs cannot take inconsistent positions. Either these individuals do not speak for or make admissions on behalf of the Company or they are represented by the Company's counsel.[2] Requiring Plaintiffs to make this determination before beginning any substantive conversations with the former employees is entirely consistent with the New Jersey RPC. Indeed, this Court has mandated that "prior to engaging in any *ex parte* communications about the 'subject of the representation,' [plaintiffs' counsel] was primarily obligated to determine if [the potential witness] was in the 'litigation control group' within the

---

[1] While Plaintiffs are correct that New Jersey Rule of Professional Conduct ("RPC") 1.13 has narrowed the definition of the litigation control group, Plaintiffs do not—and cannot—dispute that they are still required to follow the requirements of RPC 4.3 which govern an attorney's communication with an "unrepresented person." *See, e.g., Andrews v. Goodyear Tire & Rubber Co., Inc.*, 191 F.R.D. 59, 79 (D.N.J. 2000) ("Once the approaching attorney has ascertained that a person is not in the litigation control group or otherwise represented by counsel, the attorney's ethical obligations are not over. In other words, the attorney is not free under the RPCs to then engage in a substantive conversation with the potential witness . . . The attorney must consider the requirements of RPC 4.3, which further address an attorney's communications with an 'unrepresented person[.]'"). In *Andrews*, the court ordered that "there should be a general format to which an approaching attorney should adhere in confronting a current or former employee of an organization which would insure that an attorney is abiding by his ethical obligations." *Id.* at 80 n.18 (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 911 F. Supp.148, 152 n.5 (D.N.J. 1995); *In re Env't Ins. Declaratory Judgment Actions*, 252 N.J. Super. 510, 523 (1991)).

[2] *See, e.g., Gordon v. Bechtel Intern.*, No. Civ. 2001/132, 2001 WL 1727251, *2 (D.V.I. Dec. 28, 2001) (a member of the litigation control group "must have been an employee possessing the legal authority to bind [the Company] in a legal evidentiary sense; i.e., a 'person authorized by [the Company] to make a statement concerning the subject' of [plaintiff's] claims. The rationale is premised on the likelihood that the corporation's attorney would have spoken with such a person, whose statements would constitute an admission.") (citations omitted).

DrinkerBiddle&Reath
L L P

Honorable Madeline Cox Arleo
November 19, 2009
Page 4

meaning of RPC 1.13(a) or otherwise represented by counsel." *Andrews*, 191 F.R.D. at 81 (interpreting the revised New Jersey RPC).

**Plaintiffs' Request for 55 Additional Custodians**

Plaintiffs argue that VMU has the burden to demonstrate undue burden in connection with Plaintiffs' request for 55 additional custodians. The law is clear, however, that Plaintiffs must first demonstrate that the additional custodians are likely to have relevant information that would lead to admissible evidence, *Takacs v. Union County*, No. 08-711 (KSH), 2009 WL 3048471, *2 (D.N.J. Sept. 23, 2009), *Hite v. Peters*, No. 07-4492 (RMB), 2009 WL 1748860, *3 (D.N.J. Jun. 19, 2009), which they have utterly failed to do. The one case cited by Plaintiffs to support their burden-shifting argument is distinguishable from the facts here. In *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931 (WHP), 2009 U.S. Dist. LEXIS 73447, *23 (S.D.N.Y. Aug. 13, 2009), plaintiffs sought to add six additional custodians to electronic discovery, increasing the total number of custodians from seven to 13.

Here, Plaintiffs ask for **55 *additional custodians*** at this time without having reviewed any of the hundreds of thousands of pages of documents already produced. These 55 custodians, identified solely on the basis of title on an organizational chart, are in addition to the 21 custodians VMU has already agreed to, including the entire IPO working group and all of VMU's senior management. Plaintiffs' demand seeks to more than triple the number of custodians to include a substantial portion of VMU's work force. To support such an extraordinarily broad search, Plaintiffs must first meet their burden of demonstrating relevance, and even then, the Court can limit Plaintiffs' request when the burden of a discovery request is likely to outweigh the benefits. *See Takacs*, 2009 WL 3048471 at *1 ("The purpose of [Rule 26(b)(2)(C)(iii)'s] rule of proportionality is 'to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry.'"). In fact, Plaintiffs have not even attempted to make the necessary showing that would entitle them to 55 additional custodians, particularly in light of the burden articulated by VMU.

Even if Plaintiffs were able to demonstrate that they were otherwise entitled to 55 additional custodians, the burden would have to be weighed by the Court. VMU has cited specific costs and time estimates to demonstrate the undue burden of collecting, reviewing and producing the documents of 55 additional custodians, unlike the defendant in *Capitol Records* that resisted several additional custodians. *See* VMU's Ltr. at 10-11. Where VMU could acquire the documents from live servers and computers, VMU estimates that the cost to load the documents to our system, before an attorney reviews a

DrinkerBiddle&Reath

Honorable Madeline Cox Arleo
November 19, 2009
Page 5

single document, would cost in the range of $300,000. VMU's Ltr. at 10. Where VMU would be required to search back-up tapes, the costs would be far greater.[3]

\* \* \* \* \*

With respect to the discovery requests propounded by VMU, VMU requested that Plaintiffs provide sufficient information that is relevant to Plaintiffs' tracing obligations as well as VMU's causation and damages defenses such as communications with financial advisors, tax returns accounting for profits and losses and brokerage statements.[4] Plaintiffs argue in their letter that their tax returns are irrelevant and VMU's

---

[3] Under Federal Rule of Civil Procedure 26(b)(2), "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." In those circumstances, Plaintiffs must demonstrate "good cause" and the Court must consider the undue burden limitations of Rule 26(b)(2)(C) before ordering the production of the inaccessible information. *Id.*; *Major Tours, Inc. v. Colorel*, No. 05-3091(JBS/JS), 2009 WL 3446761, *3-4, *6 (D.N.J. Oct. 20, 2009) (noting that backup tapes are "typically classified as inaccessible" and refusing to order defendants to search all of their backup tapes for the requested e-mails); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 320 (S.D.N.Y. 2003) ("Backup tapes must be restored using a process similar to that previously described, fragmented data must be de-fragmented, and erased data must be reconstructed, all before the data is usable. That makes such data inaccessible.").

Even if Plaintiffs were able to demonstrate good cause, the Court must apply a seven-factor test to determine which party should bear the costs of reviewing the backup tapes. *Major Tours*, 2009 WL 3446761 at *3, 6. The seven factors include: (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources. *Id.*; *see also Zubulake*, 217 F.R.D. at 324 (requesting that the defendants sample five backup tapes and then submit affidavits regarding the costs and time spent before going any further); *OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 476 (N.D. Cal. 2003) (holding that 125-150 hours of work to complete the extraction process for requested versions of source code was unduly burdensome and deciding to split the costs evenly between the parties).

[4] Subsequent to their November 10, 2009 Letter, Plaintiffs produced heavily redacted brokerage statements in response to VMU's document request. VMU reserves all rights with respect to Plaintiffs' recent document production, including the right to challenge Plaintiffs' redactions.

DrinkerBiddle&Reath

Honorable Madeline Cox Arleo
November 19, 2009
Page 6

requests amount to "harass[ment]." Pls. Ltr. at 8.[5] Plaintiffs' objection is without merit. Among other things, Plaintiffs' tax returns and other material are relevant to testing the extent to which they suffered losses due to their alleged purchases of VMU securities. The level of Plaintiffs' losses – if any – is particularly relevant to whether they would be adequate class representatives. Because Plaintiffs' tax returns are relevant to these proceedings and are essential to testing Plaintiffs' qualifications as potential class representatives, both of the cases cited by Plaintiffs are distinguishable. *See Wiggins v. Clementon Police Dep't*, No. 07-5033 (RKB), 2009 U.S. Dist. LEXIS 66955, at *5 (D.N.J. July 30, 2009) (recognizing that the production of tax returns was not necessary in a civil rights case); *Funke v. Life Fin. Corp.*, Civ. No. 99-11877 (CMB), 2003 WL 1787125, at *2 (S.D.N.Y. Apr. 3, 2003) (noting that the requesting party did not have a good faith basis for requesting the tax returns).

To ascertain Plaintiffs' adequacy as class representatives and to gather information necessary for a possible affirmative defense, VMU also requested interrogatory responses and documents related to Plaintiffs' investment strategies. Plaintiffs concede that documents related to their investments in VMU securities are relevant, but refuse to produce documents "regarding their transactions with wholly unrelated companies." Pls. Ltr. at 8. Plaintiffs fail to understand that in investigating their investment strategy – including and indeed exclusive of their alleged purchase of VMU securities – VMU may uncover additional information and documents that confirm, among other things, that Plaintiffs made a preexisting decision to purchase VMU securities. For example, if Plaintiffs have a common practice of participating in IPOs because they believe IPOs are generally a good investment, it would be impossible for Plaintiffs to argue that they were harmed in this case because they relied on VMU's Offering Documents. *See, e.g., In re HealthSouth Corp. Sec. Litig.*, Nos. CV-03-BE-1500-S, CV-03-BE-1501-S, CV-03-BE-1502-S, 2009 WL 3152226, *34 (N.D. Ala. Sept. 30, 2009) ("If simple logic shows that plaintiff's investment decision occurred *before the registration statement*, then the decision is not traceable to a registration statement and no bases arises for a Section 11 claim.").

Plaintiffs' attempt to distinguish *APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 476 F.3d 1261, 1272 (11th Cir. 2007), which held that the "Section 11 presumption of reliance does not apply . . . where sophisticated investors . . . make a binding investment commitment months before the filing of a defective registration statement[,]" fails because Plaintiffs have presented no evidence as to when they made their investment commitment to purchase VMU securities. Indeed, Plaintiffs concede that another case

---

[5] Plaintiffs also allege that the parties have not met and conferred on the issue of tax returns. This is simply not true. This specific request was discussed during the October 14, 2009 meet-and-confer.

DrinkerBiddle&Reath LLP

Honorable Madeline Cox Arleo
November 19, 2009
Page 7

cited by VMU confirms that "a plaintiff does not rely on the misleading registration statement if the investment decision was made prior to its issuance." Pls. Ltr. at 9 n.13 (citing *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 634 (S.D.N.Y. 2007)). These more recent cases support VMU's argument; specifically, that the presumption of reliance in a Section 11 case is no longer applicable if Plaintiffs generally and/or in this case made their investment decision before the release of the Offering Documents. The weight of more recent law makes clear that VMU is entitled to probe whether Plaintiffs have a more general investment strategy that if used would render reliance on any offering documents meaningless.

\* \* \* \* \*

For the reasons stated above as well as those set forth in VMU's November 6 letter to this Court, VMU respectfully submits that Plaintiffs' request that the Court compel further discovery from VMU is without merit and should be denied, and respectfully requests that this Court order Plaintiffs (1) to comply with their ethical obligations in any future communications they have with former employees; and (2) to respond to VMU's interrogatories and produce documents in response to VMU's document requests.

Respectfully submitted,

James M. Altieri

cc: All Counsel of Record (via CM/ECF)